T.C. Memo. 2013-108

UNITED STATES TAX COURT

MOHAMED MAWJI AND FATEMA MAWJI, Petitioners <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8386-12.                   Filed April 15, 2013.

<u>Thomas A. Sadaka</u> and <u>Thomas F. Hudgins</u>, for petitioners.[1]

<u>Joel D. McMahan</u>, for respondent.

MEMORANDUM OPINION

CHIECHI, <u>Judge</u>: Respondent determined the following deficiencies in,

---

[1]Thomas A. Sadaka (Mr. Sadaka), who has his office in Orlando, Florida, has represented petitioners since he filed the petition on their behalf. Thomas F. Hudgins (Mr. Hudgins), who has his office in Naples, Florida, did not enter an appearance in this case until January 11, 2013, shortly before the commencement of the January 14, 2013 trial session in Tampa, Florida, at which this case was calendared for trial.

[*2] and accuracy-related penalties under section 6662(a)[2] on, petitioners' Federal income tax (tax) for their taxable years 2008 and 2009:

| Year | Deficiency | Accuracy-Related Penalty |
|------|-----------|--------------------------|
| 2008 | $89,683 | $17,936.60 |
| 2009 | 64,022 | 12,804.40 |

We must decide whether to sustain the determinations in the notice of deficiency that respondent issued to petitioners for their taxable years 2008 and 2009. We hold that we will sustain those determinations.

## Background

All of the facts have been deemed established for purposes of this case under Rule 91(f).

Petitioners resided in Florida at the time they filed the petition.

During each of the years 2008 and 2009, the taxable years at issue, petitioners owned or controlled businesses that sold, inter alia, computer hardware products.

---

[2]All section references are to the Internal Revenue Code in effect for the years at issue. All rule references are to the Tax Court Rules of Practice and Procedure.

[*3]  During 2008, petitioners maintained in the United States (1) a Capital One Credit card, (2) a financial account with Bank of America bearing an account number ending in 6410, (3) a financial account with Wachovia bearing an account number ending in 1148, (4) a financial account with Suntrust bearing an account number ending in 7834, and (5) a financial account with Wachovia in the name "Nexon."  (We shall refer collectively to all of those listed accounts that petitioners maintained during 2008 in the United States as 2008 U.S. financial accounts.) During 2008, petitioners deposited $375,269.07 to their 2008 U.S. financial accounts.

During 2008, petitioners maintained in the United Kingdom (1) a financial account with First Trust bearing an account number ending in 0059, (2) a financial account with First Trust bearing an account number ending in 7864, (3) a financial account with First Trust bearing an account number ending in 9021, and (4) a financial account with First Trust bearing an account number ending in 7849.  (We shall refer collectively to all of those listed accounts that petitioners maintained in the United Kingdom during 2008 as 2008 U.K. financial accounts.)  During 2008, petitioners deposited $127,492.73 to their 2008 U.K. financial accounts.

During 2009, petitioners maintained in the United States (1) a financial account with Bank of America bearing an account number ending in 6410, (2) a

[*4] financial account with Suntrust bearing an account number ending in 7834, (3) a financial account with Wachovia bearing an account number ending in 1148, and (4) a financial account with Wachovia bearing an account number ending in 7983. (We shall refer collectively to all of those listed accounts that petitioners maintained in the United States during 2009 as 2009 U.S. financial accounts.) During 2009, petitioners deposited $1,554,995 to their 2009 U.S. financial accounts.

During 2009, petitioners maintained in the United Kingdom (1) a financial account with First Direct bearing an account number ending in 0059, (2) a financial account with First Direct bearing an account number ending in 7864, (3) a financial account with First Direct bearing an account number ending in 9021, (4) a financial account with First Direct bearing an account number ending in 7849, and (5) a financial account with First Direct bearing an account number ending in 4730. (We shall refer to all of those listed accounts that petitioners maintained in the United Kingdom during 2009 as 2009 U.K. financial accounts.) During 2009, petitioners deposited $533,921.66 to their 2009 U.K. financial accounts.

Petitioners filed Form 1040, U.S. Individual Income Tax Return, for each of their taxable years 2008 (2008 tax return) and 2009 (2009 tax return). In the 2008

[*5] tax return, they reported "Wages, salaries, tips, etc." of $90,000, "Taxable interest" of $2,468, and "total income" of $92,468. Petitioners failed to report for their taxable year 2008 gross receipts of $238,765 in Schedule C, Profit or Loss From Business (Schedule C). In their 2009 tax return, petitioners reported "Wages, salaries, tips, etc." of $68,125, "Taxable interest" of $1,987, "Rental real estate, royalties, partnerships, S corporations, trusts, etc." from Schedule E, Supplemental Income and Loss (Schedule E), of "-$491", and "total income" of $69,621. Petitioners failed to report in their 2009 tax return Schedule C gross receipts of $118,461.66.[3]

Respondent issued a notice of deficiency (notice) to petitioners for their taxable years 2008 and 2009. In that notice, respondent determined, inter alia:

> It is determined that in the absence of adequate records, your taxable income for the tax years 2008 and 2009 has been computed by reference to bank deposits and cash payments, plus personal and other nondeductible expenditures if any. Thus, it is determined you had additional gross business income for both years. Accordingly, taxable income is increased $238,765.00 for the taxable year ended

---

[3]Petitioners also failed to report in their 2009 tax return Schedule C-2 gross receipts of $19,544 and Schedule E income of $32,200 from Aegis, Inc. Petitioners indicated in the pretrial memorandum that they filed late on January 3, 2013, that they do not contest the determinations that respondent made in the notice of deficiency issued to them for their taxable years 2008 and 2009 (discussed in the text) requiring them to report those respective amounts in their 2009 tax return.

[*6] December 31, 2008 and $118,461.66 for the taxable year ended December 31, 2009.

It is determined that as a result of embezzlement of funds from Eaegis,[4] Incorporated to pay personal expenses that you have additional flow-through income of $32,200.00 reportable on your individual return for the tax year 2009. Accordingly, taxable income is increased $32,200.00 for the taxable year ended December 31, 2009. (See 4605-A for Eaegis Incorporated).[5]

It is determined that Fatema Mawji had additional income of $19,544.00 as payment for bookkeeping services rendered during 2008 to Eaegis, LLC. Accordingly, taxable income is increased $19,544.00 for the taxable year ended December 31, 2009.[6]

Respondent also determined in the notice that petitioners are liable for each of their taxable years 2008 and 2009 for the accuracy-related penalty under section 6662(a).

On December 3, 2012, we issued an Order to Show Cause (OSC) in which we granted respondent's motion for order to show cause why proposed facts and evidence should not be accepted as established, as provided in Rule 91(f) (respondent's Rule 91(f) motion). In that OSC, we also ordered petitioners to file

---

[4]The name of the company from which petitioners reported in their 2009 tax return Schedule E income of $32,200 is spelled inconsistently in different documents in the record. For convenience, we shall use the spelling "Aegis". See supra note 3.

[5]See supra note 3.

[6]See supra note 3.

**[\*7]** a response to the OSC which complied with Rule 91(f)(2) and in which they were to show why the matters set forth in respondent's proposed stipulation of facts and the exhibits referenced therein and attached thereto[7] should not be deemed established for purposes of this case.[8]  We further stated in the OSC:

> If by the date specified [December 17, 2012] no response is <u>received</u> with respect to any such matter or portion thereof [in respondent's proposed stipulation of facts and the exhibits referenced therein and attached thereto], or if the response is evasive or not fairly directed to any such matter or portion thereof, that matter or portion thereof will be deemed established for purposes of this case, and an Order will be entered pursuant to Rule 91(f)(3).

On December 6, 2012, petitioners filed a response to the OSC.  Petitioners did not show in that response, as they were required to do by our OSC and Rule 91(f)(2), why the matters set forth in respondent's proposed stipulation of facts and the exhibits referenced therein and attached thereto should not be deemed established for purposes of this case.  Consequently, by Order dated December 11, 2012, we made the OSC absolute and ordered that the facts and evidence set forth

---

[7]Respondent's proposed stipulation of facts and the exhibits referenced therein and attached thereto were attached as an exhibit to respondent's Rule 91(f) motion.

[8]The OSC explicitly required that we receive petitioners' response to the OSC on or before December 17, 2012.

**[*8]** in respondent's proposed stipulation of facts and the exhibits referenced therein and attached thereto are deemed established for purposes of this case.

On December 17, 2012, petitioners filed a motion for reconsideration of our Order dated December 11, 2012 (petitioners' motion for reconsideration). Petitioners did not show in that motion why the matters set forth in respondent's proposed stipulation of facts and the exhibits referenced therein and attached thereto should not be deemed established for purposes of this case. Consequently, by Order dated December 19, 2012, we denied petitioners' motion for reconsideration.

On December 28, 2012, respondent timely filed a pretrial memorandum. In that pretrial memorandum, respondent indicated that respondent expected to call as a witness at trial Raza Meghjee and that respondent reserved the right to call at trial impeachment witnesses and any witnesses listed in the pretrial memorandum that petitioners filed. In respondent's pretrial memorandum, respondent estimated that the trial in this case would take two hours. In that pretrial memorandum, respondent stated, inter alia, that "respondent intends to rely on the stipulations of fact deemed established by this Court's order dated December 11, 2012 to support respondent's income determinations."

[*9]   On January 3, 2013, petitioners filed late a pretrial memorandum.  In that pretrial memorandum, petitioners indicated that "Petitioners may testify" as witnesses at trial and that they reserved the right to call at trial impeachment witnesses and those witnesses listed in respondent's pretrial memorandum.  In petitioners' pretrial memorandum, petitioners estimated that the trial in this case would take eight hours.  In that pretrial memorandum, petitioners stated:

> Petitioner contends, and can show, that the deposits categorized by the Respondent as unreported income of the Petitioners was in reality the Petitioners own money that was being transferred from one account of their accounts to another and that the money was all savings and income of the Petitioner that had previously been taxed as appropriate in either the United States or the United Kingdom.  [Reproduced literally.]

On January 9, 2013, respondent filed a motion in limine.  In that motion, respondent stated:

> 1.  On January 8, 2013, respondent received petitioners' late-filed pretrial memorandum in which petitioners assert they will, over the course of an eight hour trial, present testimony to contradict the facts deemed established in this case.
>
> 2.  Petitioners suggest that the evidence they intend to offer will establish that the income determined by respondent's bank deposits analysis consists of non-taxable transfers.  However, petitioners have refused to provide documents to respondent to support their contention.  Instead, petitioners have engaged in a pattern of behavior designed to prevent respondent from receiving information regarding petitioners' income and financial accounts.

**[\*10]** 3.  In fact, during respondent's examination of petitioners' 2008 and 2009 income tax years, and throughout respondent's preparation for trial of this case, respondent has requested information including foreign and domestic financial account records, copies of income tax returns allegedly filed in the United Kingdom, and other information that may support petitioners' position, but in each instance petitioners have refused to produce all of the requested information.  Instead, as detailed in respondent's Report filed with this Court on December 28, 2012, petitioners have employed an abusive tactic of refusing to produce information in response to respondent's requests.

4.  Because of petitioners' refusal to voluntarily exchange information, informally or formally, and their refusal to participate in the stipulation process, respondent filed a Tax Court Rule 91(f) motion on November 28, 2012.  That motion was granted on December 3, 2012 and, after granting petitioners an opportunity to respond, this Court issued an order on December 11, 2012 that deemed established for purposes of this case those facts and exhibits referred to in and attached to respondent's proposed stipulation of facts.

5.  Now, in their late-filed pretrial memorandum served on respondent, petitioners assert that they will produce testimony, or some other evidence, during an eight hour trial to contradict the facts deemed established in this case notwithstanding that petitioners have never produced the information in response to respondent's requests.

6.  After failing to properly respond to respondent's discovery requests and failing to participate in the stipulation process, petitioners should not be permitted to introduce evidence that contradicts those facts deemed established by this Court's order dated December 11, 2012.

7.  Consequently, respondent moves that this Court exclude any evidence offered by petitioners that contradicts the facts deemed established in this case.

[*11] On January 9, 2013, we granted respondent's motion in limine.

On January 14, 2013, this case was called from the calendar (calendar call) for our trial session in Tampa, Florida. Counsel for petitioners, Mr. Sadaka and Mr. Hudgins, and counsel for respondent, Joel D. McMahan, appeared. Mr. McMahan informed us that the case was for trial. Mr. Hudgins initially spoke at the calendar call on behalf of petitioners and stated that Mr. McMahan had informed him on January 12, 2013,[9] that we had granted respondent's motion in limine but, according to Mr. Hudgins, "it wasn't posted on the docket". Mr. Hudgins stated as follows with respect to our having granted respondent's motion in limine: "I believe that the motion may have been granted improvidently or without due course for the evidence, which I believe actually has a material bearing on the case here." We asked Mr. Hudgins whether he was making an oral motion to vacate our Order dated January 9, 2013, granting respondent's motion in limine. He replied that he was. We indicated that after the calendar call we would have a hearing on that oral motion. We then asked whether the parties wanted to raise anything else at the calendar call. Mr. Hudgins stated: "provided that we're able to actually call witnesses, we would estimate that it would take

---

[9]January 12, 2013, was the day after Mr. Hudgins had filed an entry of appearance in this case.

[*12] approximately". At that point, we corrected Mr. Hudgins' misstatement of what our granting of respondent's motion in limine meant. We stated: "the motion in limine didn't have anything to do with calling witnesses. It had to do with what those witnesses could testify to and/or what exhibits could be introduced through the witnesses." Mr. Hudgins then made an oral motion to vacate our Order dated December 11, 2012, making the OSC absolute. We denied that oral motion.

On January 14, 2013, this case was recalled for hearing on petitioners' oral motion to vacate our Order dated January 9, 2013, granting respondent's motion in limine. Counsel for petitioners, Mr. Hudgins, and counsel for respondent, Mr. McMahan, appeared. At the conclusion of that hearing, we denied petitioners' oral motion to vacate our Order dated January 9, 2013, granting respondent's motion in limine.

On January 15, 2013, this case was recalled for trial. Mr. Hudgins, counsel for petitioners, and Mr. McMahan, counsel for respondent, appeared. Mr. Hudgins informed us that petitioners intended to call only one witness at trial, petitioner Mohamed Mawji (Mr. Mawji). Mr. McMahan informed us that respondent did not intend to call any witnesses. Mr. Hudgins called Mr. Mawji as a witness and asked him the following question: "Mr. Mawji, you are the

[*13] taxpayer, correct?" Mr. Mawji responded: "Correct." At that point Mr. Hudgins stated: "Your Honor, given this Court's pretrial procedure, at this point the Petitioners would like to rest their case." Mr. McMahan then stated that "Respondent rests." We asked respective counsel for the parties whether the parties wanted to file posttrial briefs. They responded that they did not.

Although petitioners called Mr. Mawji as their witness, he did not testify except to state that he was "the taxpayer", and respondent did not call any witnesses. As a result, we had this case submitted on the basis of the facts deemed established under Rule 91(f).

## Discussion

Petitioners bear the burden of proving error in the determinations in the notice that remain at issue.[10] See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

We have found the following facts. During each of the years 2008 and 2009, the taxable years at issue, petitioners owned or controlled businesses that sold, inter alia, computer hardware products.

During 2008, petitioners maintained in the United States (1) a Capital One Credit card, (2) a financial account with Bank of America bearing an account

_____

[10] See supra note 3.

[*14] number ending in 6410, (3) a financial account with Wachovia bearing an account number ending in 1148, (4) a financial account with Suntrust bearing an account number ending in 7834, and (5) a financial account with Wachovia in the name "Nexon." During that year, petitioners deposited $375,269.07 to their 2008 U.S. financial accounts.

During 2008, petitioners maintained in the United Kingdom (1) a financial account with First Trust bearing an account number ending in 0059, (2) a financial account with First Trust bearing an account number ending in 7864, (3) a financial account with First Trust bearing an account number ending in 9021, and (4) a financial account with First Trust bearing an account number ending in 7849. During that year, petitioners deposited $127,492.73 to their 2008 U.K. financial accounts.

During 2009, petitioners maintained in the United States (1) a financial account with Bank of America bearing an account number ending in 6410, (2) a financial account with Suntrust bearing an account number ending in 7834, (3) a financial account with Wachovia bearing an account number ending in 1148, and (4) a financial account with Wachovia bearing an account number ending in 7983. During that year, petitioners deposited $1,554,995 to their 2009 U.S. financial accounts.

**[\*15]** During 2009, petitioners maintained in the United Kingdom (1) a financial account with First Direct bearing an account number ending in 0059, (2) a financial account with First Direct bearing an account number ending in 7864, (3) a financial account with First Direct bearing an account number ending in 9021, (4) a financial account with First Direct bearing an account number ending in 7849, and (5) a financial account with First Direct bearing an account number ending in 4730. During that year, petitioners deposited $533,921.66 to their 2009 U.K. financial accounts.

Petitioners filed their 2008 tax return and their 2009 tax return. In their 2008 tax return, they reported "Wages, salaries, tips, etc." of $90,000, "Taxable interest" of $2,468, and "total income" of $92,468. Petitioners failed to report in their 2008 tax return Schedule C gross receipts of $238,765. In their 2009 tax return, petitioners reported "Wages, salaries, tips, etc." of $68,125, "Taxable interest" of $1,987, "Rental real estate, royalties, partnerships, S corporations, trusts, etc." from Schedule E of "-$491", and "total income" of $69,621. Petitioners failed to report in their 2009 tax return Schedule C gross receipts of $118,461.66.[11]

---

[11]Petitioners also failed to report in their 2009 tax return Schedule C-2 gross receipts of $19,544 and Schedule E income of $32,200 from Aegis, Inc. Petitioners

(continued...)

**[\*16]** On the record before us, we sustain the deficiency determinations for petitioners' taxable years 2008 and 2009.

We turn now to respondent's determinations that petitioners are liable for each of their taxable years 2008 and 2009 for the accuracy-related penalty under section 6662(a). Respondent has the burden of production with respect to those determinations. See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). To satisfy respondent's burden of production, respondent must come forward with "sufficient evidence indicating that it is appropriate to impose", Higbee v. Commissioner, supra at 446, the accuracy-related penalties at issue. Although respondent bears the burden of production with respect to those penalties, respondent "need not introduce evidence regarding reasonable cause * * * or similar provisions. * * * the taxpayer bears the burden of proof with regard to those issues." Id.

On the record before us, we find that respondent has satisfied respondent's burden of production under section 7491(c) with respect to the accuracy-related

---

[11](...continued)
indicated in the pretrial memorandum that they filed late on January 3, 2013, that they do not contest the determinations that respondent made in the notice issued to them for their taxable years 2008 and 2009 requiring them to report those respective amounts in their 2009 tax return.

**[\*17]** penalty that respondent determined to impose on petitioners for each of their taxable years 2008 and 2009.

Petitioners advanced no argument in their pretrial memorandum, and adduced no evidence, with respect to the accuracy-related penalties at issue.

On the record before us, we sustain the accuracy-related penalty determinations for petitioners' taxable years 2008 and 2009.

To reflect the foregoing and the concessions of petitioners,

<u>Decision will be entered for</u>

<u>respondent</u>.